**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| NCR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ATP TIC.BIL.ELK.GUC.KAY.URT.PA,<br>d/b/a Tradesoft,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE<br><br>NO. _______________ |

**COMPLAINT**

COMES NOW Plaintiff NCR Corporation ("NCR") and files this Complaint for breach of contract against Defendant ATP TIC.BIL.ELK.GUC.KAY.URT.PA, d/b/a Tradesoft ("ATP"), stating as follows:

**PRELIMINARY STATEMENT**

This is an action to recover amounts due under a contract between NCR and ATP (the "Agreement"), pursuant to which NCR provided hosted services, software, and computer equipment to ATP for use in managing restaurants. ATP entered into the Agreement on June 30, 2011 with NCR's predecessor-in-interest, Radiant Systems, Inc. NCR and ATP performed under the Agreement largely without incident from 2011 until November 2019, when ATP suddenly refused to pay outstanding invoices. ATP cited alleged defects in the service provided by

NCR over the course of the 8-year relationship, claiming it was entitled to a set-off against the invoices currently due. Aside from there being no such "defects," the invoices were for services specifically ordered by ATP – with signed purchase orders – and delivered by NCR.

Based on information and belief, ATP's true reason for failing to pay amounts owed is that ATP has developed a system for hosted software services to replace and compete with NCR's products. Once the development of ATP's own system was close to completion, it stopped paying NCR even though it continued to submit purchase orders for, and use, NCR services.

ATP's refusal to pay is in breach of the Agreement, entitling NCR to recover all amounts due under the contract of not less than **$1,184,260.86**, plus late fees, interest, attorneys' fees, and costs of this lawsuit.

**PARTIES**

1.

NCR is a Maryland corporation with its principal place of business located at 864 Spring Street NW, Atlanta, GA, 30308.

2.

ATP is a company organized and existing under the laws of Republic of Turkey, with its principal place of business located at Emirhan cad. No: 145/A Kat 9 At Balmumcu, Istanbul, Turkey. ATP may be served at this address.

## JURISDICTION AND VENUE

3.

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because (i) the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and (ii) there is complete diversity of citizenship between NCR (Maryland and Georgia) and ATP (a foreign company headquartered in Turkey and without citizenship in Maryland or Georgia).

4.

Defendant ATP has consented to jurisdiction and venue in this Court as set forth in Paragraph 17 of the Agreement.

## FACTUAL ALLEGATIONS

### A. The Agreement.

5.

On June 30, 2011, ATP executed the Agreement by which it became the exclusive reseller in Turkey of certain NCR computer programs and computer equipment used in managing restaurants. (A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.)

6.

Pursuant to the Agreement, ATP was authorized and obligated: to market NCR's Software, Equipment and Complementary Services (installation, training,

equipment maintenance and software support) to Customers; to submit Orders for the purchase of licenses for Software and resell the licenses to Customers; to purchase the Equipment from NCR and resell the Equipment to Customers; and to provide the Complementary Services to Customers.[1]

7.

ATP purchased the Software and Equipment from NCR at prices set forth in Exhibit A to the Agreement and resold them to Customers.

8.

Though ATP was obligated under the Agreement to "use its best efforts to market actively the Software, Equipment, and Complementary Services to Customers," including to "fund and participate in local and regional marketing campaigns, tradeshows, and promotional events," ATP only sold limited NCR Software and Equipment to customers other than TAB GIDA San. Ve Tic. A.Ş. ("Tab Gida"), which is owed by the same parent company as ATP. Tab Gida owns and manages a number of restaurant franchises throughout Turkey.

9.

The Agreement obligated NCR to provide support services to ATP via its international help desk as long as ATP was paying maintenance and support fees

[1] Capitalized terms are as defined in the Agreement.

for the software, as well as to provide Equipment maintenance services and Software maintenance services, including Upgrades. (Agreement, § 9.)

10.

In September 2015, NCR and ATP executed "Terms of Mutual Agreement" (the "Mutual Agreement"), setting forth additional terms under the Agreement for NCR's sale of NCR Solutions and Products, including Hosted Solutions[2] and the associated professional and support services, to ATP specifically for resale to Tab Gida restaurant sites. (A true and correct copy of the Mutual Agreement is attached as **Exhibit 2**.)

11.

At the time of ATP's breach of the Agreement, most of the outstanding invoices from ATP to NCR were for Hosted Services provided by NCR under the Mutual Agreement.

12.

The Agreement provides the following terms for placing orders and for payment:

(i) ATP issues a purchase order to NCR;

[2] Capitalized terms are as defined in the Mutual Agreement.

(ii) Upon shipment of the Software and Equipment from NCR, NCR issues a corresponding invoice; and

(iii) ATP pays NCR within 30 days of receipt of the invoice.

(Agreement, § 11.1.) Under the Mutual Agreement, payment terms were extended to 60 days.

13.

ATP paid for the Hosted Services to NCR's US bank account in US dollars.

## B. **ATP Developed Its Own Software To Replace NCR's And Stopped Paying NCR.**

14.

Unbeknownst to NCR at the time, ATP began a project to develop software to replace the Hosted Services it was purchasing from NCR. NCR only discovered the project in late 2019.

15.

Upon information and belief, ATP failed to use its best efforts to market NCR Equipment and Software so as to preserve market share for its upcoming competing product.

16.

Upon information and belief, development of ATP's software was near completion in November 2019, when ATP stopped paying NCR's invoices.

## C. ATP Breaches The Agreement.

17.

Beginning with a November 26, 2019 invoice for $134,615.05, ATP stopped paying for the Hosted Services it was ordering from NCR. There are now 35 outstanding invoices from NCR, dated through September 22, 2020, for a total amount due of **$1,184,260.86**. A list of outstanding invoices, followed by copies of the invoices, are attached hereto as **Exhibit 3**.

18.

ATP sent purchase orders for the services invoiced in each of the unpaid invoices, pursuant to Section 11.1 of the Agreement, and received the services from NCR.

19.

ATP was non-responsive when approached by NCR regarding payment of the outstanding invoices in early 2020. Later in the spring, ATP requested a payment plan, citing the economic effects of the COVID-19 pandemic, and promised to bring its account current by the first quarter of 2021. NCR agreed, and the first payment date was set for July 14, 2020.

20.

ATP continued ordering hosted services from NCR, but then failed to make its promised payment on July 14. Instead, ATP's subsidiary, Tab Gida, sent a

letter on that date, claiming for the first time that it was not obligated to pay the invoices because the NCR systems it was using lacked features and had thereby caused it damages.

21.

On July 27, 2020, NCR sent ATP a notice of nonpayment under Section 11.8 of the Agreement, stating that it would suspend support services to ATP if the account was not paid in full within 15 days, and claiming interest of 1.5% per month.  (A copy of the July 27, 2020 letter is attached as **Exhibit 4**.)

22.

ATP did not make any payment.  On August 13, 2020, NCR provided notice of its intent to terminate the Agreement.  (A copy of the August 13, 2020 letter is attached as **Exhibit 5**.)

23.

Around the same time, ATP sent an email to NCR claiming that its affiliate, Tab Gida, was refusing to pay because Tab Gida had "incurred expenses and lost opportunities due to not having solutions in place on promised dates."  The email listed 14 "expenses incurred" and claimed a total associated "expense" of $8,088,245.00.  (A copy of the August 12, 2020 email from ATP is attached as **Exhibit 6**.)

24.

On November 3, 2020, ATP sent NCR an "invoice" for $1,184,260.86 – the amount due *from* ATP *to* NCR – with the single line item: "Return of Invoices Related to TAB Gida." (A copy of the "Invoice" is attached as **Exhibit 7**.) This invoice was directed to NCR at its global headquarters in Atlanta, Georgia.

**D. <u>ATP's "Offsetting Claims" Have No Merit.</u>**

25.

With the exception of two items, all of the "expenses" listed by ATP in the August 12, 2020 email were estimated amounts for "man-days" allegedly expended in connection with the listed issues. No further detail was given for how the listed issues resulted in thousands of "man-days" of labor on the part of ATP; indeed, the listed issues could not possibly have caused the "expenses" claimed by ATP. (*See* Ex. 6.)

26.

Each of the issues listed by ATP had either 1) never been raised to NCR before, or 2) had been raised, and resolved by NCR.

27.

ATP also claimed a refund for NCR Software Activation License Fees for 5,294 software licenses, noting, "systems replaced due to on-going problems." In

reality, ATP is replacing NCR systems because it has developed its own software solution.

28.

NCR sent a demand letter from counsel on August 17, 2020, demanding payment of the past due invoices in the total amount of $1,184,260.86. (A true and correct copy of the August 17, 2020 letter is attached as **Exhibit 8**.)

29.

The demand letter noted that the Agreement expressly provides that NCR shall not be liable "for special, indirect, incidental or consequential damage or loss of any nature…" (Agreement, ¶ 18.) All of the "expenses" listed by ATP, even if they had merit – they do not – are consequential damages for which NCR is not liable and which should not form the basis for any offset.

30.

On August 31, 2020, ATP responded to the demand letter through counsel. ATP stated that it was rejecting NCR's termination of the Agreement, and once again claimed that Tab Gida had suffered losses due to alleged deficiencies in service from NCR and was due compensation. (A true and correct copy of the August 31, 2020 letter from counsel for ATP is attached hereto as **Exhibit 9**; however, it is written in the Turkish language.)

**COUNT I – BREACH OF CONTRACT**

31.

NCR re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

32.

ATP entered into the Agreement with NCR to purchase and resell NCR products and services.

33.

NCR has satisfied all its obligations under the Agreement and is entitled to receive all payments due under the Agreement.

34.

ATP currently owes NCR $1,184,260.86 for products and services ordered by ATP and provided by NCR under the Agreement.

35.

ATP is not entitled to any offset against unpaid invoices.

36.

NCR is entitled to recover $1,184,260.86 in unpaid invoices, plus a late fee in the amount of 1.5% per month under Section 11.8 of the Mutual Agreement.

**COUNT II – ATTORNEYS' FEES AND COSTS**

37.

NCR re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

38.

Section 17 of the Agreement entitles NCR to recover from ATP all "costs, reasonable attorneys' fees and related expenses" incurred to enforce the terms of the Agreement and collect amounts owed thereunder.

39.

ATP's breach of the Agreement was in bad faith. ATP has been stubbornly litigious and has caused NCR unnecessary time and expense, thereby entitling NCR to recover attorneys' fees and the costs of this litigation pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, NCR prays for judgment in its favor and the following relief against ATP:

(a) Compensatory damages in an amount no less than **$1,184,260.86**, plus late fees;

(b) Attorneys' fees and expenses of litigation;

(c) Prejudgment and post judgment interest;

(d) Such other and further relief as the Court deems just and proper.

Respectfully submitted this 7th day of April, 2021.

*/s/ Rachel F. Gage*

Jeremy U. Littlefield
Georgia Bar No. 141539
jlittlefield@robbinsfirm.com
Rachel F. Gage
Georgia Bar No. 547982
rgage@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

*Attorneys for Plaintiff*